UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Willie Toney,
    Plaintiff

    v.                                         Civil No. 06-cv-327-SM
                                               Opinion No. 2007 DNH 110

Scott Perrine, James Letourneau,
and Todd Feyrer,
    Defendants


**O R D E R**

Following his arrest, prosecution, and eventual acquittal for loitering, Willie Toney brought this civil action against three former Jaffrey Police Officers. In his two count complaint, Toney alleges that he was subjected to an unconstitutional arrest (count two) and was subsequently the victim of a malicious criminal prosecution (count one). Defendants move for summary judgment as to both counts, asserting that there are no genuinely disputed issues of material fact and that they are entitled to judgment as a matter of law. For the reasons set forth below, that motion is granted.

**Standard of Review**

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable

to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party. See generally Fed. R. Civ. P. 56(e). It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore bald

assertions, unsupported conclusions, and mere speculation, see
Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997), as well
as those allegations which have been "conclusively contradicted
by [the non-moving party's] concessions or otherwise," Chongris
v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987). Moreover,
the non-moving party cannot create a dispute concerning material
facts by simply submitting an affidavit that contradicts his or
her complaint, deposition testimony, or answers to
interrogatories without providing an adequate explanation for
that discrepancy. See Colantuoni v. Alfred Calcagni & Sons,
Inc., 44 F.3d 1, 4-5 (1st Cir. 1994). See also Torres v. E.I
Dupont de Nemours & Co., 219 F.3d 13, 20 (1st Cir. 2000); Schott
Motorcycle Supply, Inc. v. American Honda Motor Co., 976 F.2d 58,
61 (1st Cir. 1992).

**Background**

Many of the details surrounding Toney's arrest are very much
in dispute. Nevertheless, the parties do appear to agree on
several core facts. Taking those facts as established and
viewing the remaining facts in the light most favorable to Toney,
the pertinent events leading up to Toney's prosecution are as
follows.

On the evening of May 17, 2003, Officer Todd Feyrer was on patrol, driving an unmarked Crown Victoria police vehicle and wearing a Jaffrey police uniform.[1] As he drove past "Mr. Mike's" convenience store, he noticed an unfamiliar man (Toney) using the pay phone at the south end of the store. According to Feyrer, they made eye contact. Feyrer says he was somewhat suspicious because the unknown man was adjacent to an auto parts store which was closed for business, the area was dark, criminal activity had occurred in that area within the past year, and the auto shop had doors and windows in the rear of the building. Accordingly, he made a U-turn and headed back to the convenience store parking lot.

---

[1] In their affidavits, both Officer Letourneau and Feyrer expressly assert that Feyrer was wearing a full Jaffrey Police Department uniform at the time. Although Toney's unverified complaint alleges that Officer Feyrer was not wearing a police uniform at the time, his affidavit (filed in response to defendants' motion and affidavits) does not directly address the issue. Fairly read, however, it asserts that although the undercover officers were not in uniform, Officer Feyrer was wearing his uniform. See Toney Affidavit (document no. 11-2) at para. 4 ("the officers on foot [i.e., Perrine and Letourneau] were not wearing uniforms and the car [in which Feyrer was riding] was not marked"). Accordingly, the court has accepted defendants' uncontradicted sworn statement of fact in that regard and assumes by his silence that Toney now acknowledges that Feyrer was wearing his police uniform.

Meanwhile, Officers Perrine and Letourneau were on an undercover detail in the area of the convenience store. They were parked in an unmarked police vehicle, with the lights off, and were dressed in plain clothes. They, too, had observed Toney using the pay phone. According to those officers, they overheard Toney having a loud conversation/argument, which caught their attention. They then watched as Toney walked across the parking lot toward the side of the auto parts store. According to the officers, Toney was behaving in a somewhat suspicious manner – holding his back to the wall and peeking around the corner. The officers suspected that he was planning to engage in criminal activity. Toney denies that he was in the darkened area beside the store for any unlawful purpose. Instead, he says, he was looking for a place to urinate.

According to Officers Letourneau and Perrine, when Mr. Toney saw Officer Feyrer drive by, he tried to conceal himself and eventually ran away, toward the woods behind the auto parts store. At that point, Letourneau and Perrine exited their vehicle, unholstered their sidearms (while maintaining them in a lowered position), and ordered Toney to stop. By then, Officer Feyrer had arrived on the scene to assist. The officers handcuffed Mr. Toney while he was on the ground, searched him for

weapons, and removed a pocket knife from his pants.  According to the officers, Toney did not have any means of identification.  When Officer Feyrer asked his name and whether he had ever been arrested, Toney told the officers that his name was Fabian Jackson and admitted that he had been arrested before for breaking and entering.  When asked what he was doing, Toney told the officers he walked into the darkened area to urinate.  The officers say they didn't believe that explanation because his zipper was not undone, there was no evidence that he had urinated in the area, and his behavior was not consistent with someone simply looking for a place to relieve himself.

Toney, on the other hand, tells a slightly different story.  Although he acknowledges that he ran from Officer Feyrer, he says he had no idea that Feyrer was a police officer (since, although he was in uniform, Feyrer was driving an unmarked police vehicle).  Moreover, Toney denies that his zipper was closed when he was confronted by Letourneau and Perrine, and says he actually showed them that it was down (thereby confirming that he was, indeed, doing nothing more than looking for a place to relieve himself).  Toney does not, however, deny giving the officers a false name or that he told them that he had been arrested in the

past for breaking and entering (or, as Officer Feyrer recalls, "burglaries and thefts").

Toney was arrested for loitering, taken to the station for booking, and released on bail. Three days later, Officer Perrine swore out a complaint against Toney, charging him with loitering, in violation of N.H. Rev. Stat. Ann. ("RSA") 644:6. The matter was subsequently referred to Attorneys David Park and Jessica Schlamp, Regional Prosecutors in the Jaffrey-Peterborough District Court. After reviewing the case, Park and Schlamp determined that there was probable cause to prosecute Toney for loitering. On August 1, 2003, state District Court Judge Lawrence found Toney not guilty of the charge. This suit ensued.

## Discussion

I. Count Two - Arrest in Violation of the Fourth Amendment.

Toney alleges that defendants lacked probable cause to arrest him for loitering and, as a consequence, violated his rights under the Fourth Amendment. As the court of appeals has noted, "It is common ground that a warrantless arrest must be based on probable cause." United States v. Brown, __ F.3d __, 2007 WL 2377302, *6 (1st Cir. Aug. 22, 2007) (citations omitted). The critical issue raised by defendants' motion for summary

judgment is, then, whether they had probable cause to believe that Toney was loitering.  They did.

Probable cause to effect a warrantless arrest exists when police officers:

> relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect committed or was committing a crime.  The inquiry into probable cause to support an arrest focuses on what the officer knew at the time of the arrest, and should evaluate the totality of the circumstances.

United States v. McFarlane, 491 F.3d 53, 56 (1st Cir. 2007) (citations and internal punctuation omitted).  Of course, whether the facts and circumstances supported the conclusion that Toney had engaged in criminal activity depends upon the essential elements of the offense with which he was charged.

The relevant portion of the state statute under which Toney was charged provides:

> A person commits a violation if he knowingly appears at a place, or at a time, under circumstances that warrant alarm for the safety of persons or property in the vicinity.  Circumstances which may be considered in determining whether such alarm is warranted include, but are not limited to, when the actor:

    (a)   Takes flight upon appearance of a law
enforcement official or upon questioning by
such an official;

    (b)   Manifestly endeavors to conceal himself or
any object;

RSA 644:6 I ("Loitering or Prowling").[2]  While the parties disagree as to many of the details concerning the events leading up to Toney's arrest, several critical facts are undisputed.

1. Officers Letourneau and Perrine observed Toney walk to the darkened area adjacent to the auto parts store;

2. From the officers' standpoint, Toney appeared to be acting in a suspicious manner, seemingly trying to conceal his presence in the darkened area (behavior that is, to be sure, consistent both with potential criminal activity and an innocent attempt to find a private location to urinate);

3. When he saw uniformed Officer Feyrer drive by in an unmarked Crown Victoria police cruiser, Toney ran away;

4. When the officers detained him, Toney provided a false name (which was unknown to them at the time) and admitted that he had been arrested in the past for breaking and entering;

---

[2] Under New Hampshire law, "[e]very offense is either a felony, misdemeanor or violation.  Felonies and misdemeanors are crimes.  A violation does not constitute a crime and conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense."  RSA 625:9 II ("Classification of Crimes").

>    5.   While Toney's innocent explanation for his
>         seemingly suspicious behavior (i.e., that he
>         was merely looking for a spot to relieve
>         himself) might well have been true, the
>         officers did not believe it.

See Complaint (document no. 1-2) at paras. 5-9.

Given those undisputed facts, it is plain that the officers had probable cause to arrest Toney for loitering/prowling. Not only did he take flight when he saw officer Feyrer, but he had also been trying to conceal his presence in the darkened area adjacent to the auto parts store (albeit perhaps for an innocent reason). And, although the officers gave Toney an opportunity to explain his suspicious behavior (as required by the statute), based upon their observations, they did not believe him.

But, says Toney, a jury might well credit his explanations for his seemingly suspicious behavior – that is, that he didn't realize Feyrer was a police officer when he fled and that he had been concealing himself in the darkened area adjacent to the auto parts store simply in an effort to find a somewhat private place to relieve himself. He goes on to assert that if the jury believes that he was actually engaged in entirely innocent conduct, then the officers necessarily lacked probable cause to

arrest him. Consequently, says Toney, this case cannot be resolved on summary judgment. The court disagrees.

The determination of whether the officers had probable cause to arrest Toney must be made by considering the information the officers had, and reasonable inferences they could draw from that information, prior to the arrest. See, e.g., Burke v. Town of Walpole, 405 F.3d 66, 80 (1st Cir. 2005) ("Probable cause thus exists if the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information would suffice to warrant a prudent person in believing that a person has committed or is about to commit a crime.") (citation and internal punctuation omitted). Importantly, the officers were not required to believe Toney's self-serving explanation for his seemingly suspicious behavior. "A reasonable police officer is not required to credit a suspect's story." Cox v. Hainey, 391 F.3d 25, 32 (1st Cir. 2004) (citing Brady v. Dill, 187 F.3d 104, 112 (1st Cir. 1999); Criss v. City of Kent, 867 F.2d 259, 263 (6th Cir. 1988)).

Moreover, the inferences the officers drew from the facts available to them (i.e., that Mr. Toney was not looking for a place to relieve himself but was, instead, possibly preparing to

11

engage in criminal activity) need not have been correct; they need only have been reasonable. It is well established that a police officer's conclusion that probable cause exists to justify a warrantless arrest need not be "ironclad, or even highly probable. [His] conclusion that probable cause exists need only be reasonable." United States v. Winchenbach, 197 F.3d 548, 555-56 (1st Cir. 1999). Given the undisputed facts of record, defendants' determination that there was probable cause to arrest Toney for loitering was entirely reasonable. Contrary to Toney's suggestion, the fact that he was acquitted of the charge brought against him does not raise a genuine issue of material fact as to whether defendants had probable cause to arrest him. See Plaintiff's memorandum (document no. 11) at paras. 32-33. His acquittal merely demonstrates that the State was unable to prove each of the essential elements of the charge beyond a reasonable doubt.

Moreover, even if defendants were not entitled to summary judgment on the question of whether there was probable cause to support Toney's arrest, they would plainly be entitled to qualified immunity. See, e.g., Anderson v. Creighton, 483 U.S. 635, 641 (1987) ("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but

mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable."). As the court of appeals has observed,

> Probable cause exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators. The test is objective in nature, and the proof must be such as to give rise to a reasonable likelihood that the putative arrestee committed the suspected crime.
>
> Qualified immunity, however, requires a somewhat lesser showing. For that purpose, the operative inquiry is not whether the defendant's actions actually abridged some constitutional right, but, rather, whether those actions were obviously inconsistent with that right. <u>Thus, in the case of a warrantless arrest, if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach</u>.

Cox, 391 F.3d at 31 (citations and internal punctuation omitted) (emphasis supplied). Here, the existence of probable cause to arrest Mr. Toney for loitering was, at the very least, "arguable or subject to legitimate question."

II.  Count One - Malicious Prosecution.

To prevail on his malicious prosecution claim, Toney must prove that he was subjected to a criminal prosecution instituted by Officer Perrine (the sole defendant in count one), without probable cause and with malice, and that the criminal proceeding terminated in his favor.  See Robinson v. Fimbel Door Co., 113 N.H. 348, 350 (1973) (citations omitted).  For the reasons discussed above, Toney cannot, as a matter of law, demonstrate that Perrine lacked probable cause to swear out the complaint against him.[3]

Finally, even if probable cause were lacking, Toney has not pointed to sufficient evidence of record to support the inference that Perrine was motivated by malice when he instituted the criminal proceedings against him.  Malice exists "when the primary purpose in instituting the criminal proceeding was not to

---

[3]  Parenthetically, the court notes that Perrine did not actually prosecute the case against Toney.  Rather, the matter was referred to Attorneys Park and Schlamp who, upon reviewing the evidence, determined that there was a sufficient legal basis to prosecute Toney for loitering/prowling under RSA 644:6.  And, as the New Hampshire Supreme Court has noted, provided a person discloses all relevant facts within his knowledge that a reasonable person would regard as important, the commencement of proceedings upon the legal advice of counsel establishes probable cause.  See Hogan v. Robert H. Irwin Motors, Inc., 121 N.H. 737, 739-40 (1981).

bring an offender to justice, but was, on the contrary, ill will, personal hostility, or to obtain a personal advantage." MacRae v. Brant, 108 N.H. 177, 181 (1967) (citations omitted) (emphasis supplied).  On this record, even construing all facts that are not undisputed in the light most favorable to Toney, a properly instructed jury could not reasonably conclude that Perrine was motivated by malice.

## Conclusion

Whether defendants had probable cause to arrest Toney for loitering/prowling turns on whether they had reasonably reliable information from which a prudent person could conclude that Toney committed or was committing a crime.  Importantly, the officers' probable cause determination need not be "correct"; it need only be reasonable.  And, in reaching that conclusion, they are entitled to consider and reject a suspect's self-serving explanation for seemingly suspicious conduct.  Such was the case here.  Whether a civil jury might reasonably credit Toney's explanation for his behavior on the night in question is not relevant.  The question presented is whether, based upon the totality of the circumstances, the officers reasonably concluded that Toney had engaged in loitering/prowling.  They did.

For the foregoing reasons, as well as those set forth in defendants' memoranda, defendants' motion for summary judgment (document no. 9) is granted.  Their motion to strike (document no. 14) is denied as moot.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

                                                          _____
                                                          Steven J. McAuliffe
                                                          Chief Judge

September 10, 2007

cc:  Michael J. Sheehan, Esq.
     Charles P. Bauer, Esq.
     Lisa Lee, Esq.
     Donald E. Gardner, Esq.
     Catherine M. Costanzo, Esq.